IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANDREW BARGANIER,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0151-WS-M |
| | ) |
| **FORD MOTOR COMPANY,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiffs' Motion to Remand (doc. 6). The Motion has been briefed and is now ripe for disposition.

**I.    Background.**

This case arises from plaintiffs' contention that the new motor vehicle they bought was a $70,000 lemon. In their Complaint, plaintiffs, Andrew and Camie Barganier, allege that they purchased a 2018 Ford F-150 truck from defendant Sandy Sansing Ford Lincoln LLC ("Sandy Sansing") in Baldwin County, Alabama, on or about March 24, 2018. According to the Barganiers, the vehicle was fraught with defects and mechanical failures from the start. Problems allegedly ranged from "grinding and scrubbing noises" under the hood and front end, to a malfunctioning navigation system, to an unresponsive touch screen, to a non-operational seat massage function, to a balky lock mechanism on the front passenger door. (Complaint (doc. 1-2), ¶¶ 7-8, PageID.15.) The Complaint alleges that Sandy Sansing failed and refused to repair these defective conditions, despite being given multiple opportunities to do so, with the result being that the Barganiers lost use of their truck for at least 71 days. (*Id.*, ¶¶ 9-12.) The Complaint further alleges that Sandy Sansing and defendant Ford Motor Company were aware of numerous defects and complaints concerning this model of vehicle, but intentionally hid and suppressed such information from the Barganiers at the time of purchase, repair and afterwards. (*Id.*, ¶¶ 14-20.)

On the basis of these and other factual allegations, the Barganiers assert numerous claims against Sandy Sansing and Ford, including Alabama state-law causes of action for fraud, fraud in the inducement, breach of express warranty, breach of implied warranty, claim for damages for accepted non-conforming goods, revocation of acceptance, and breach of implied warranty of fitness for a particular purpose.  Of central importance to the pending Motion to Remand, in Count Eight of their Complaint, the Barganiers also bring a claim against Sandy Sansing and Ford for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (the "MMWA" or the "Act"), arising from defendants' alleged failure to honor written warranties concerning the vehicle.[1]

The Barganiers filed their Complaint in the Circuit Court of Baldwin County, Alabama. On March 11, 2020, however, Ford filed a Notice of Removal (doc. 1-1, PageID.3) removing this action to this District Court.  In so doing, Ford predicated federal subject-matter jurisdiction on the federal question provisions of 28 U.S.C. § 1331 based on the MMWA cause of action. Original federal jurisdiction over MMWA claims arises only if the amount in controversy is $50,000 or more, exclusive of interest and costs.  The Notice of Removal alleged that this amount-in-controversy requirement was satisfied because, among other things, the Complaint identified the purchase price of the vehicle as $69,488.16 and the Barganiers seek return of the purchase price, as well as other types of damages. (Doc. 1-1, PageID.7-8.)  Plaintiffs challenge this reasoning, and have filed a Motion to Remand this action to state court on the grounds that their MMWA claim is worth "far less" than the $50,000 jurisdictional minimum.  (Doc. 6, PageID.78.)

**II.     Analysis.**

The purpose of the MMWA is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products …." 15 U.S.C. § 2302(a).  To advance these objectives, the Act confers a private right of action upon consumers "damaged by the failure of a supplier, warrantor, or service contractor to

---

[1]     Count Nine of the Complaint is a claim against defendant Army Aviation Center Federal Credit Union, FSU, now known as All In Federal Credit Union, seeking to hold that defendant liable to the Barganiers for all of their allegations against Sandy Sansing and Ford.  No party has alleged or suggested that Count Nine has any jurisdictional significance to the issues presented in the Motion to Remand.

comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract ….." 15 U.S.C. § 2310(d)(1). "Consumers may sue for a MMWA violation in either state or federal court." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir. 2002). The catch is that a MMWA claim is not cognizable in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest[] and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B); *see also Oliver v. Homes of Legend, Inc.*, 2000 WL 1092130, *1 n.2 (M.D. Ala. Apr. 17, 2000) ("A Magnuson-Moss Warranty Act claim brought by an individual plaintiff supports federal jurisdiction only if the amount in controversy is at least $50,000."). Thus, the critical jurisdictional question – and the inquiry upon which the Motion to Remand hinges – is whether the amount in controversy for the Barganiers' MMWA claim meets or exceeds the $50,000 minimum needed to support a federal forum.

As the removing party, Ford bears the burden of showing by a preponderance of the evidence that the amount-in-controversy threshold is satisfied. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."). That said, a removing defendant is "not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, Ford may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted). What a defendant may not do, however, is resort to "conjecture, speculation, or star gazing" to show that the jurisdictional threshold is satisfied. *Pretka*, 608 F.3d at 754. In evaluating the sufficiency of a removing defendant's jurisdictional showing, courts need not "suspend reality or shelve common sense," but instead "may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062.

In the MMWA context, the caselaw is instructive as to the amount-in-controversy calculation in three key respects. First, the Eleventh Circuit has explained that "the amount in controversy for purposes of … § 2310(d)(3)(B) does not include damages flowing from any

pendent state law claim brought by a plaintiff." *Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998); *see also Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1296 n.5 (11th Cir. 1999) ("the only claims (in the purchasers' complaints) the district court could consider in determining whether the jurisdictional amount of § 2310(d)(3) had been met were the purchasers' claims under the Magnuson-Moss Act"); *Holmes v. Kabco Builders, Inc.*, 2007 WL 841686, *3 (S.D. Ala. Mar. 15, 2007) ("the relief sought in non-MMWA claims is of no consequence in the § 2310(d)(3) analysis"). Second, in order to compute the amount in controversy for MMWA claims, "resort to state law is proper in determining the applicable measure of damages." *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979); *see also Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2nd Cir. 2017) (where the warrantor made only a limited written warranty, "the text and legislative history of the Act indicate that courts should look to state law to determine the applicable measure of damages, which informs the amount in controversy") (citations and internal marks omitted). "[U]nder Alabama law, damages recoverable under a breach of warranty claim are measured by 'the difference … between the value of the goods accepted and the value they would have had if they had been as warranted …. In a proper case any incidental and consequential damages … may also be recovered.' Ala. Code § 7-2-714(2) & (3)." *Holmes*, 2007 WL 841686, at *5; *see also Winchester v. McCulloch Bros. Garage, Inc.*, 388 So.2d 927, 928 (Ala. 1980) (under Alabama version of the UCC, "damages are normally the difference between the value of the goods as warranted and the value as delivered, plus incidental and consequential damages").

And third, where (as here) the plaintiffs seek revocation of acceptance and refund of the purchase price, the seller/defendant is entitled to a credit for the value that the plaintiffs derived from their use of the good. *See Holmes*, 2007 WL 841686, at *4 ("a plaintiff who revokes acceptance and receives a refund of the purchase price under the MMWA must surrender possession of the good to the seller and must afford the seller a credit for the value that the purchaser received from his use of the good while it was in his possession"). Thus, in a MMWA case, the plaintiffs' "true money damages – and concomitantly, the true amount in controversy – would equal only the difference between the price of the new car and the worth of the allegedly defective car, reduced by [their] beneficial use of the defective car." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405-06 (7th Cir. 2004); *see also Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 885 (6th Cir. 2005) (in MMWA case involving a vehicle, "the amount in controversy here would

be calculated by determining the difference between the cost of a replacement vehicle … and the present value of the Mustang ….  The resulting figure … would be further reduced by the value that [plaintiff] obtained from the Mustang."); *Holmes*, 2007 WL 841686, at *4 ("correctly stated, the true value of any refund remedy that plaintiffs might receive, and hence the true amount in controversy, equals the difference between the original purchase price of the mobile home and the value of the mobile home in its present state, with that figure reduced additionally by the value of plaintiffs' beneficial use of the mobile home in the interim").

Paragraph 24 of the Complaint reflects that the total purchase price of the Barganiers' truck (including dealer options, maintenance and service plans) was $69,488.16.[2]  As reflected by the above discussion, however, the Barganiers' measure of damages on the MMWA claim (and, hence, the amount in controversy for removal purposes) is the difference between that purchase price and the value of the truck in its allegedly defective condition, minus the value that the Barganiers received for the use of the truck while it was in their possession.  To show the value of the truck, plaintiffs cite a commercial "Vehicle History Report" estimating its retail value at $46,460.00.  (Doc. 6-2, PageID.86.)  The difference between those figures is approximately $23,000, which must be reduced further in MMWA damages calculations to account for the value that the Barganiers received from using the truck.[3]  Plaintiffs' point is that

---

[2]   The Purchase Agreement appended to plaintiffs' Motion to Remand breaks down this purchase price as follows: (i) base price of $64,338.16; (ii) "AWS Three for One" for $575.00; (iii) "Luxcare" for $575.00; (iv) a maintenance plan for $395.00; and (v) a service contract for $3,605.00.  (Doc. 6-1, PageID.85.)

[3]   Two points bear noting here.  First, in their Motion to Remand, plaintiffs incorrectly state that the difference between the $69,488.16 purchase price and the $46,460.00 estimated valuation in the Vehicle History Report is $17,878.16.  (Doc. 6, PageID.83.)  The arithmetical error does not erode the key underlying insight that the difference between those figures is much smaller than the $50,000 minimum amount in controversy for a federally cognizable MMWA claim.  Second, although the Barganiers do not assign a dollar figure to the value of their use of the truck, surely that number is larger than zero, as the Vehicle History Report reflects that plaintiffs have driven the truck more than 36,840 miles in the approximately two years they have owned it.  (Doc. 6-2, PageID.86.)  Thus, according to plaintiffs, the true measure of damages under the MMWA, and the true amount in controversy for removal purposes, would be something less than the $23,000 difference between purchase price and estimated value of the allegedly defective truck.

under any reasonable valuation estimates, their recoverable damages on the MMWA cause of action will be well below $50,000.

In response, Ford, the removing defendant, takes issue with plaintiffs' amount-in-controversy analysis and calculations in several respects. First, defendant posits that the Barganiers value the truck at $0, so the difference between purchase price and present value is the full $69,488 purchase price. (Doc. 11, PageID.105.) This argument is unpersuasive; indeed, it flies in the face of logic and common sense to assert that a 2018 Ford F-150 truck that originally sold for nearly $70,000 has a fair market value of $0 just two years later because of various mechanical problems. Defendant cites neither authority nor evidence suggesting any colorable likelihood that such a valuation might be valid or sustainable, either as a matter of law or under the facts of this case. Second, Ford says the Barganiers' MMWA claim is reasonably likely to exceed $50,000 because they "seek unspecified emotional damages." (Doc. 11, PageID.106.) But emotional distress damages are not available under the MMWA, and "[t]he jurisdictional amount of $50,000 can only be met by a claim for economic loss damages under the MMWA." *Grant v. Cavalier Mfg.*, 229 F. Supp.2d 1332, 1338 (M.D. Ala. 2002).[4]

Third, Ford cites a line of cases spearheaded by *Smith v. State Farm Fire & Cas. Co.*, 868 F. Supp.2d 1333 (N.D. Ala. 2012), for the proposition that plaintiffs' request for unspecified emotional distress damages automatically renders the case removable. This argument would be unavailing even if emotional distress damages for breach of warranty were recoverable in MMWA cases, which (as discussed above) they are not. As numerous courts in this Circuit (including the undersigned) have recognized, the *Smith* line of decisions has "routinely been criticized and rejected." *Blount v. Coe Mfg. Co.*, 2020 WL 1866190, *2 (S.D. Ala. Apr. 14, 2020) (citation omitted); *see also Dunlap v. Cockrell*, 336 F. Supp.3d 1364, 1368 (S.D. Ala. 2018) (noting that "*Smith* constitutes a distinctly minority view in this Circuit," and "declin[ing]

---

[4]  *See also Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) (holding that "personal injury damages for breach of warranty are not recoverable under the MMWA"); *Cotterell v. General Motors LLC*, 2019 WL 6894256, *8 (D. Conn. Dec. 18, 2019) (plaintiff "is *not* entitled to recover a sum for her … mental anguish under the MMWA, … and any such damages may not be counted toward satisfaction of the $50,000 amount-in-controversy requirement") (citations and internal marks omitted); *Luis v. Courtesy Ford, LLC*, 2006 WL 8433504, *2 (S.D. Fla. Oct. 4, 2006) ("emotional distress damages are not recoverable under the MMWA for breach of warranty, thereby precluding them from being counted toward the MMWA federal jurisdictional amount").

to follow the *Smith* line of cases"). Fourth, Ford attacks the commercial "Vehicle History Report" document as an inadmissible document "inserting an arbitrary, low cash figure in the Motion." (Doc. 11, PageID.106.) This argument turns the applicable burden of proof on its head. It is not the Barganiers' burden to prove that the amount in controversy is less than $50,000; rather, the burden rests on Ford (as the party invoking federal jurisdiction) to show by a preponderance of the evidence that the amount in controversy on the MMWA claim is $50,000 or more. Ford has not done so. It offers neither evidence nor reasonable argument that the value of the truck as accepted by the Barganiers was such a trifling number that the difference between the $69,000 purchase price and that valuation could reasonably meet or exceed $50,000. At most, Ford argues that the actual value of the truck is $0 because the Barganiers have alleged that they would not have purchased it and that it is not merchantable in its current state; however, a $0 fair market valuation of the vehicle in question cannot be reconciled with common sense. Besides, the difference between the purchase price and the value of the truck must be further reduced by the value of the use of the truck to the Barganiers (who have apparently driven it more than 36,000 miles in approximately two years) in order to determine the MMWA amount in controversy. Defendant makes no attempt to ascribe any reasonable dollar amount to that valuation, much less to offer any evidentiary basis for same. As such, the Court is left with only conjecture and speculation to support defendant's contention that the amount in controversy on the MMWA claim is more likely than not at least $50,000.[5] The Court therefore cannot agree with Ford's position that it has "provided evidence from which it may be readily deduced that the amount in controversy exceeds the jurisdictional minimum." (Doc. 11, PageID.109.)

Fifth and finally, Ford maintains that the Motion to Remand should be denied because of the absence of "any affirmation from Plaintiffs that they will accept no more than $50,000 for

---

[5] Another way to make the point is as follows: Everyone agrees that the purchase price of the vehicle was $69,488. And the law is clear as to the damages formula for MMWA claims involving allegedly defective automobiles that breach written warranties. As such, there is no question that in order for the amount in controversy on the MMWA claim to be at least $50,000, the sum of (i) the value of the truck in its current state, plus (ii) the value of the Barganiers' beneficial use of the allegedly defective truck for extensive driving in a two-year period, can be no more than $19,488. Defendant has offered no plausible scenario under which that result might obtain here, but has merely insisted that the value of the truck is $0 based on a strained and unreasonable reading of the allegations of plaintiffs' Complaint. That is not enough to meet defendant's burden of establishing federal removal jurisdiction.

their Magnuson-Moss claims." (Doc. 11, PageID.112.)  Indeed, defendant asserts that the Barganiers' omission in this regard "should be determinative" of the jurisdictional issue. Binding circuit precedent unambiguously refutes this argument.  *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) ("Although the notice of removal clearly asserts that the jurisdictional requirement is satisfied, the only fact alleged in support of that assertion is that Williams refuses to stipulate that her claims do not exceed $75,000.  There are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof on the jurisdictional issue.").[6]

### III.   Conclusion.

For all of the foregoing reasons, the Court concludes that the removing defendant has not met its burden of showing that federal subject-matter jurisdiction properly lies in this action. Specifically, defendant has not shown by a preponderance of the evidence that the amount in controversy on plaintiffs' Magnuson-Moss Warranty Act claim is at least $50,000, exclusive of interest and costs.  Accordingly, and given the requirement that removal statutes be construed narrowly, with all doubts as to removal jurisdiction being resolved in favor of remand, plaintiffs' Motion for Remand (doc. 6) is **granted**.  This action is hereby **remanded** to the Circuit Court of Baldwin County, Alabama for lack of federal jurisdiction.

DONE and ORDERED this 12th day of May, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] *See also Dunlap*, 336 F. Supp.3d at 1366 ("[I]t has long been the law of this Circuit that a plaintiff's mere refusal to stipulate that her claims do not exceed $75,000 does not and cannot satisfy a removing defendant's jurisdictional burden."); *Thompson v. Ortensie*, 2017 WL 4772741, *3 (S.D. Ala. Oct. 23, 2017) ("[D]efendants assert that Thompson has not stipulated that he will neither seek nor accept more than $75,000 in damages in this case.... Even if defendants had shown such a refusal to stipulate, binding precedent deems such a refusal to be insufficient to establish the amount in controversy for jurisdictional purposes."); *Collinsworth v. Big Dog Treestand, Inc.*, 2016 WL 3620775, *5 (S.D. Ala. June 29, 2016) ("Defendant places much emphasis on the fact that Plaintiffs have not stipulated that they do not and/or will not seek damages in excess of the jurisdictional limits of this Court. Defendant's emphasis is misplaced."); *McCray v. Dolgencorp, LLC*, 2018 WL 3370556, *3 (M.D. Ala. July 10, 2018) ("The mere fact that McCray has declined to stipulate that her damages are less than $75,000.00 is insufficient for the court to conclude that it is more likely than not that her damages exceed that amount.").